IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS L. MCCANTS,

                    Petitioner,                        OPINION AND ORDER

     v.

                                                   11-cv-16-wmc

WILLIAM POLLARD, Warden,
Waupun Correctional Institution,

                   Respondent.

State inmate Thomas McCants petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state court conviction. McCants' sole claim is that he was denied his constitutional right to have the counsel of his choice at trial by the circuit court's disqualification of his retained defense attorney for an actual or potential conflict of interest. After conducting a preliminary review of the petition, this court directed respondent to show cause why relief should not be granted. The respondent filed his answer, along with records from the relevant state court proceedings, and both parties subsequently submitted briefing. Because McCants is not entitled to the relief sought, his petition will now be denied.

BACKGROUND

In 2005, McCants was convicted in Dane County Case No. 03CF1395 of committing first-degree intentional homicide while armed. The charges stemmed from the death of McCants' live-in girlfriend, Lizette Fountain, who was killed by a single, close-range gunshot to her face. Shortly after the charges were filed, the circuit court

granted the State's motion to disqualify McCants' defense counsel, Joseph L. Sommers, due to an actual or potential conflict of interest. The circuit court refused a subsequent motion to reinstate Sommers, concluding that (1) the original decision was sound and (2) there continued to be a proper basis to justify Sommers' disqualification.

Following the entry of a verdict against him, McCants filed a motion for post-conviction relief in circuit court, arguing that he was denied his Sixth Amendment right to be represented by the counsel of his choice.  The circuit court denied that motion in a written order following an evidentiary hearing.

On direct appeal, McCants challenged that decision, as well as the circuit court's pretrial rulings disqualifying Attorney Sommers.  In affirming McCants' conviction, the Wisconsin Court of Appeals summarized the relevant proceedings in detail:

> In June 2003, McCants was charged with the first-degree intentional homicide of Lizette Fountain. Fountain was shot to death on December 4, 2002.  At the time of McCants' arrest on this charge, Sommers represented him in another matter.  Sommers agreed to represent him in this case as well.

> In August 2003, the State moved to disqualify Sommers as McCants' attorney in this case, because of an actual or potential conflict of interest. The State supported its motion with the affidavit of Detective Todd Stetzer.  The affidavit stated that an inmate in the Dane County Jail, Steven Collins, claimed to know who killed Fountain.[1] Detective Stetzer later interviewed Collins, and Collins told Stetzer that someone named "Packey" had pulled a gun on Collins and said that he would shoot Collins with the same gun he had used to kill Fountain.  Stetzer later learned that Packey was the street name of Rovar Pollard.

> Around the same time, Collins contacted the state public defender and asked to have Sommers appointed to represent him.  Collins wanted to

---

[1] Collins offered to reveal who had killed Fountain in exchange for, among other things, the State dropping the charges pending against him.

be represented by Sommers because Sommers was McCants' attorney, and the State was not interested in the information Collins had about McCants' case.   Sommers agreed to represent Collins.[2]

McCants' preliminary hearing was held on July 18, 2003. Sommers subpoenaed Pollard to appear at the hearing, but Pollard did not come. Sommers made an offer of proof as to what Pollard would say, and also told the court that he had a witness who claimed that Pollard had admitted to shooting Fountain.   The court bound McCants over for trial, but agreed the hearing could be opened again if Pollard or another witness was produced to testify.   Sommers eventually told the court that he no longer planned to call Pollard or to ask for the preliminary hearing to be reopened.

After the preliminary hearing, Detective Stetzer spoke to Pollard. Pollard denied that he had killed Fountain, or that he had made any incriminating statements to Collins.   Pollard said that he and Collins had been in a fight while in jail, but that he did not know Collins in any other

---

[2] Sommers sent Collins two letters that set out their agreement. The first, dated June 4, 2003, stated in relevant part:

> [I]t is my understanding that you want me to remain as your attorney in the above-captioned matters even though you are aware that I am the attorney for Thomas McCants who is a suspect in the murder of Lizette Fountain. It is also my understanding that you have information to who pulled the trigger in regards to Ms. Fountains [sic] death, and you desire to possibly utilize this information in order to receive leniency from the state. Lastly, it is my further understanding that the information you have in regards to Ms. Fountain's murder does not indicate that Thomas McCants was involved, and you are not aware of any information that involves him in Ms. Fountain's murder.

In the second letter, dated June 20, 2003, Sommers stated:

> [I]t is my understanding that you are aware that Thomas McCants was charged with first degree intentional homicide today in Dane County Circuit Court, and that I am representing him on that matter. It is my further understanding that this does not change your position and you still desire that I remain your attorney in the above-captioned cases. In addition, it is my understanding that you have freely and voluntarily given me permission to utilize the information you have in regards to the death of Lizette Fountain in my defense of Thomas McCants.

context.   Stetzer then spoke with Collins about what Pollard had said.
Collins changed his story, admitted he had been lying about Pollard, and
said that McCants had actually admitted that he had killed Fountain.

Based on all of this information, the State moved to disqualify
Sommers as McCants' counsel.   The circuit court, by the Honorable Gerald
Nichol, held a hearing on the State's motion on September 16, 2003.   This
was the first of three hearings in the circuit court on this issue.

At the hearing, the State noted that Sommers had moved to
withdraw from representing Collins.   The State argued, however, that
Sommers should nevertheless be disqualified from representing McCants
because of the potential "to taint the adversarial process."   The State made
essentially three arguments in support of its motion: (1) it would not be fair
to McCants to allow Sommers to continue to represent McCants because if
Collins testified at McCants' trial, the state would argue that Sommers put
him up to it;   (2) there was the potential that Sommers would be a witness
at McCants' trial; and (3) although McCants was indigent, Sommers had
not been appointed by the state public defender, so there was the possibility
that Sommers would not see the trial through to its completion.

Sommers argued against the motion.   He told the court that he did
not believe Collins was a credible witness and did not intend to call him at
trial. Sommers also argued that the State had reason to "fear" him and did
not want him to represent McCants, because he was a formidable adversary.
Sommers also argued that McCants wanted Sommers to remain his
attorney.

The circuit court granted the State's motion, finding that there was a
potential conflict of interest that could cause problems with the trial if
Sommers continued to represent McCants.   The court concluded that
Sommers' representation could jeopardize McCants' right to a fair trial and
that there was "just too much at stake when we talk about first degree
intentional homicide to risk" that possibility.[3]

McCants was subsequently represented by a series of attorneys, but
apparently was not satisfied with the representation he received.   In

---

[3]   McCants petitioned for leave to appeal from this order. [The Wisconsin Court of
Appeals] denied the petition.

January 2005, before McCants' trial began, Sommers wrote to the circuit court asking to be reinstated as McCants' counsel.   In the motion, Sommers noted that the State's witness list did not include Collins. Sommers also included a statement from McCants saying that he waived "any complaint on my part."

The circuit court appointed Attorney T. Christopher Kelly to represent McCants on this motion.   The court, this time by the Honorable David Flanagan, held the second hearing on this issue, and denied Sommers' motion on two grounds. The court first considered whether the motion established grounds for relief from the court's previous order disqualifying Sommers.   The court found that Sommers' representation of both McCants and Collins created a serious potential for a conflict of interest, and that once Collins claimed that McCants had admitted committing the crime, there was "an absolute irreconcilable and highly substantial conflict."   The court concluded that McCants had not shown an adequate basis to grant relief from the disqualification order.   The court ruled in the alternative that if the motion were considered as one to allow Sommers to represent McCants, the court would also deny it, given all that had gone on before.

McCants went to trial represented by an attorney, and was convicted.   He then filed a motion for postconviction relief alleging that the circuit court had erred both times it considered whether Sommers should be disqualified. McCants also alleged that the State had manufactured the conflict of interest, and that Attorney Kelly had provided ineffective assistance of counsel when he did not present any evidence to this effect at the second hearing.   In September 2007, the circuit court held the third hearing on this issue.   The circuit court once again denied the motion.

*State v. McCants*, 2009 WI App 110, ¶¶ 2-13, 320 Wis. 2d 702, 771 N.W.2d 928 (June 11, 2009) (footnotes 1-3 in original).

The Wisconsin Court of Appeals applied the following legal standard in considering whether McCants was denied his constitutional right to have the counsel of his choice:

We review a circuit court's decision to disqualify defense counsel on

5

the grounds of a serious potential for a conflict of interest for an erroneous exercise of discretion. *State v. Miller*, 160 Wis. 2d 646, 654, 467 N.W.2d 118 (1991). A defendant has a qualified right to representation by counsel of choice. *Id*. at 652. An accused may make a "knowing and voluntary waiver of the right to conflict-free representation." *Id*. Such a waiver, however, does not foreclose further judicial inquiry. *Id*. at 652-53. The presumption in favor of counsel of choice and a conflict waiver may both be overcome if "the State demonstrates 'the defense attorney's actual conflict of interest or shows 'a serious potential for conflict.'" *Id*. at 653 (citing *Wheat v. United States*, 486 U.S. 153, 164 (1988)).

When an actual or potential conflict exists, "legitimate countervailing institutional interests overcome the presumption in favor of the accused's counsel of choice." *Id.* These institutional interests include "ensuring that 'criminal trials are conducted within the ethical standards of the profession,'" that "legal proceedings appear fair to all who observe them," and that the court's judgments stay intact and are "free from future attacks over the adequacy of the waiver or fairness of the proceedings." *Id*. at 653 n.2 (citing *Wheat*, 486 U.S. at 160-61).

When considering whether an actual or potential conflict exists, circuit courts should be "alert to the possibility that the government may seek to 'manufacture' a conflict to eliminate a formidable lawyer as an adversary." *Id*. at 654. The circuit courts should "be sensitive to the motives of the prosecutors" and explore this issue in the exercise of its discretion. *Id*. If the circuit court does not adequately explain its exercise of discretion, we may examine the record to determine whether the facts support the court's exercise of discretion. *Id*. at 656.

*McCants*, 2009 WI App 110, ¶¶ 14-16.

The Wisconsin Court of Appeals ultimately upheld the circuit court's decision to disqualify Sommers under this standard, finding that Sommers' concurrent representation of Collins and McCants "created the potential for a conflict of interest" that turned into "an actual conflict" once Collins identified McCants as the killer. *Id.* at ¶ 17. In so holding, the court of appeals explained that Sommers' simultaneous representation of both Collins and McCants placed him "in a bind" that could jeopardize McCants' right to

a fair trial:

> While the parties agree that it was unlikely that Collins would become a witness in the case, the circuit court judge has the discretion to remove an attorney from the case when the attorney's involvement with another party might create a situation in which the trial is interrupted or a mistrial is declared.  At the time Sommers was disqualified, there was at least the potential that Collins, or Sommers himself, would be called to testify about what Collins had said about the homicide.

*Id*. at ¶ 18.   The court of appeals, therefore, found that the decision to disqualify Sommers "was a reasonable exercise of discretion." *Id.*

The Wisconsin Court of Appeals also upheld the circuit court's subsequent decision to deny McCants' motion to reinstate Sommers as his counsel, despite McCants' assertion that he was willing to waive the potential conflict:

> [T]he circuit court has the discretion to remove an attorney when there is a potential that the attorney's involvement with someone else might taint the adversarial process.  When the court first heard the disqualification motion, there was the potential that Collins would become a witness. When Sommers asked to be reinstated, although it was unlikely that Collins would be called as a witness, it was still a possibility that Collins or Sommers would have to testify at some point.  McCants asserted that he had waived the conflict.  The court found, however, that McCants was not able to articulate either what Sommers had actually told him about the potential conflict, or demonstrate an understanding of the disadvantages that would flow from the conflict.

*Id*. at ¶ 20.   The court of appeals noted that, had Collins been called as a witness, then Sommers would be required to attack Collins' credibility on cross-examination.   Thus, the court of appeals concluded that the circuit court properly exercised its discretion in originally disqualifying Sommers *and* when it denied the subsequent motion to reinstate him as McCants counsel.   *Id.* at ¶¶ 21-22.

Finally, the court of appeals upheld the circuit court's decision to deny McCants'

motion for postconviction relief.  *Id*. at ¶ 25.   The court flatly rejected McCants'
argument "that the State had manufactured the conflict in order to have Sommers
removed from the case because of his reputation for being a formidable adversary."
Noting that Kelly had made the same argument in arguing for Sommers' reinstatement by
the circuit court, the court of appeals also disagreed with McCants' suggestion that he
received ineffective assistance of counsel in connection with that proceeding.  *Id.* at
¶¶ 23, 25.   While the postconviction court declined to allow testimony from McCants'
appointed trial attorney about Sommers' reputation, the court of appeals found no error
or abuse of discretion in excluding this type of evidence.  *Id.* at ¶ 23.   Similarly, it found
that the circuit court based its decision on testimony from Detective Stetzer that was
"credible," whereas "McCants' testimony was not."  *Id.* at ¶ 24.   Having found that the
circuit court properly denied McCants' motion for postconviction relief, the court of
appeals affirmed the judgment.   The Wisconsin Supreme Court summarily denied
McCants' petition for review from this decision on October 20, 2009.

McCants now seeks relief from his original conviction in Case No. 03CF1395 in
the form of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he was
denied his Sixth Amendment right to the counsel of his choice.[4]   He argues that the
Wisconsin Court of Appeals unreasonably applied controlling precedent in affirming the
circuit court's decision to disqualify Sommers as defense counsel *and* the subsequent

---

[4]   Although portions of the brief reference a claim of ineffective assistance of counsel
concerning one of the attorneys appointed to represent him *following* Sommers'
disqualification, the respondent correctly notes that this allegation was not raised before the
Wisconsin Supreme Court in McCants' petition for review.   As the result of his failure to

refusal to reinstate him.   The respondent maintains that McCants is not entitled to relief because the state court of appeals identified the correct law by reference to clearly-established Supreme Court precedent and applied that precedent in an objectively reasonable manner.

OPINION

## I. Habeas Corpus Standard of Review

In his petition for relief pursuant to 28 U.S.C. § 2254, McCants raises the same claim adjudicated by the circuit court on collateral review and by the Wisconsin Court of Appeals.   When a state system issues multiple decisions, a federal habeas corpus court typically considers "the last reasoned opinion on the claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012) (unless a state court adopts or incorporates the reasoning of a prior opinion, 28 U.S.C. § 2254 requires federal courts to review one state decision) (citation omitted).   Because the Wisconsin Court of Appeals addressed McCants' claim on the merits, he must show that its adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).

The standard outlined in § 2254(d)(1) is exacting and highly deferential, *Burt v. Titlow*, — U.S. —, 2013 WL 5904117, *4 (2013), demanding that state courts be given

exhaust available state court remedies, this claim appears barred by the doctrine of procedural default.   The claim is also without merit for reasons that do not require discussion.

"the benefit of the doubt." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011). To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.   A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.   *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).   A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.   *See Brown v. Payton*, 544 U.S. 133, 141 (2005).

The parties agree that the Wisconsin Court of Appeals correctly identified the applicable Supreme Court precedent regarding a criminal defendant's right to counsel of his choice, which is found in *Wheat v. United States*, 486 U.S. 153 (1988).   McCants maintains that he is entitled to relief under § 2254(d)(1) because the state court unreasonably applied the *Wheat* decision to the facts of his case.[5]   Because McCants does not rebut the state court's factual findings, those facts are "presumed to be correct" for

_____

[5] McCants is represented by counsel in this case.   His petition contends that "[t]he state [circuit] court disqualified [McCants'] counsel of choice and later refused to reinstate him for reasons that are contrary to the 6th Amendment right to counsel of choice."   Dkt. # 1, at 6. In his brief, however, McCants argues that the Wisconsin Court of Appeals unreasonably applied controlling precedent when it affirmed the circuit court's disqualification and subsequent refusal to reinstate Sommers as McCants' defense counsel.   Dkt. # 18, at 30-32. Because the terms "contrary to" and "unreasonably applied" have legal significance for purposes of determining the appropriate standard of review under the federal habeas corpus statute, 28 U.S.C. § 2254(d)(1), the court will construe the petition as one challenging an

purposes of habeas corpus review.  28 U.S.C. § 2254(e)(1).  Therefore, this court need only determine whether the state court's application of *Wheat*, which is summarized briefly below, was more than merely incorrect or erroneous; rather, it must be "objectively unreasonable."  *Williams*, 529 U.S. at 409, 410-11.  In other words, "the state court's application of clearly established federal law must have been both incorrect and unreasonable, 'that is, lying well outside the boundaries of permissible differences of opinion.'"  *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (quoting *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008)).

## II.  The Defendant's Right to Counsel of His Choice

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right .  .  . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335, 342-43 (1963) (emphasizing that an accused's right to counsel is "fundamental" in character, requiring appointment of counsel for indigent defendants charged with a serious offense).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *see also Strickland v. Washington*, 466 U.S. 668 (1984) (setting out the test for claims of ineffective assistance of counsel), whose performance is not adversely affected by an actual or potential conflict of interest that imperils the defendant's right to a fair trial.  *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).  In addition, a defendant's right to counsel includes the right to retain the

unreasonable application of clearly established Supreme Court precedent.

11

counsel of his choosing. *See Wheat v. United States*, 486 U.S. 153, 159, 164 (1988); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Caplin & Drysdale v. United States*, 491 U.S. 617, 624-25 (1989).

In *Wheat*, the Supreme Court recognized a presumption in favor of affording a defendant his choice of counsel. *Wheat*, 486 U.S. at 164.  The presumption favoring counsel of choice, however, "is circumscribed in several important respects."  *Id.* at 159. For example, "the right to counsel of choice does not extend to indigent defendants who require counsel to be appointed for them."  *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Wheat*, 486 U.S. at 159; *Caplin & Drysdale*, 491 U.S. at 624).[6]   In addition, a defendant may not "insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict free representation." *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Wheat*, 486 U.S. at 159-60).   In that respect, the presumption in favor of a defendant's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict."   *Wheat*, 486 U.S. at 164.


**III**. **The State Court's Decision Was Not Unreasonable**

The Wisconsin Court of Appeals held that the circuit court exercised reasonable discretion in disqualifying Sommers, finding that his representation of both Collins and

---

6 Court records reflect that Sommers was retained to represent McCants on federal drug trafficking charges that culminated in a guilty plea in this district.  *See United States v. McCants*, Case No. 03-cr-8-bbc (W.D. Wis. April 4, 2003).   Although the record reflects that McCants was indigent and, therefore, eligible for appointed counsel by the State Public Defender's Office during his state criminal proceeding, there is no dispute that Sommers was retained in some fashion to represent McCants on the intentional homicide charges filed against McCants in Dane County Case No. 03CF1395. Accordingly, the state court treated Sommers as though he was retained by McCants, as does this court.

McCants posed a serious potential conflict of interest, which ripened into an actual conflict on July 24, 2003, when Collins changed his story and implicated McCants as the person who murdered Lizette Fountain.  The Court of Appeals held further that the circuit court did not abuse its discretion by refusing to reinstate Sommers even after it became likely that Collins would not be called to testify by either side at trial, because "an absolute irreconcilable and highly substantial conflict" remained.  McCants argues that the Wisconsin Court of Appeals unreasonably applied *Wheat* given the circuit court's failure to find that Sommers had a "serious" potential conflict of interest and to acknowledge or apply the defendant's presumption in favor of having the counsel of his choice.  Assuming that there was a conflict of interest, Sommers also argues that the circuit court erred by failing to expressly consider whether the state manufactured the conflict.  As discussed briefly below, each of these arguments is refuted by the record, which supports the Court of Appeals' decision and demonstrates no objectively unreasonable application of clearly established precedent regarding a defendant's right to have the counsel of his choice.


### A. Finding of a Serious Potential Conflict of Interest

There is no dispute Collins contacted police in May 2003, purporting to have information about the Lizette Fountain homicide that would exonerate McCants, who was the prime suspect in that investigation.  Before he would provide that information, Collins issued a list of demands, including his request that the state drop charges of second-degree sexual assault of a child that had been filed against him on May 14, 2003,

in Dane County Case No. 03CF1111.  When detectives balked at his demands, Collins contacted the State Public Defender's Office and asked to be represented by McCants' attorney.  Sommers agreed to represent Collins, acknowledging in written correspondence that Collins wished to provide information about Ms. Fountain's death in order to receive leniency from the state.  Sommers agreed to represent Collins even though he had already promised to represent McCants in the event that formal charges were filed against him in connection with Ms. Fountain's death. Sommers did not believe there was a conflict in taking on both representations because Collins originally identified Rovar Pollard, and not McCants, as the person who killed Fountain.

After McCants was formally charged with Fountain's homicide in June 2003, the state filed its motion to disqualify Sommers as McCants' defense counsel, pointing out that Sommers used information obtained while representing Collins to subpoena Pollard for a preliminary hearing in McCants' case.  Based on the information that Collins provided to police, the state was concerned that Sommers' simultaneous representation of both Collins and McCants implicated a serious potential conflict of interest, if not an actual conflict, in the event that Collins was called as a witness on McCants' behalf. Although Sommers withdrew from representing Collins in August 2003, the state remained concerned about the serious potential conflict of interest that could arise as the result of his simultaneous representation of both men.

At a hearing on the state's motion in September 2003, Sommers acknowledged relying on information provided by Collins to subpoena Pollard on McCants' behalf.  The circuit court noted that, in doing so, Sommers had continued to represent both Collins

14

and McCants with full knowledge that Collins purported to have information about "who pulled the trigger" in the Fountain case.   Sommers insisted that there could be no potential conflict because (1) he did not intend to call Collins as a witness and (2) there was no possibility that Sommers would have to testify.

The circuit court was not persuaded. Observing that Collins had since changed his story -- now identifying McCants as the perpetrator in July 2003 -- the circuit court noted that Collins could be called as a witness for the state, which would then place Sommers in the untenable position of having to cross-examine a former client.   In that event, Sommers would be required to attack Collins' credibility and could even be required to testify in order to impeach his former client.   Although Sommers downplayed the possibility that Collins would ever testify due to credibility issues, the state countered that Sommers had found Collins credible enough to rely on his information and subpoena Pollard.   Considering both parties' arguments, the circuit court concluded that there was "too much at stake" to risk jeopardizing McCants' right to a fair trial in a first-degree intentional homicide case.

Although not expressly saying so, the circuit court's decision implicitly recognized that Sommers had a potential conflict of interest that was serious enough to overcome the presumption in favor of a defendant's right to counsel of his choice.   Even after the state chose not to include Collins on its pretrial witness list in 2005, the seriousness of the potential conflict was such that the circuit court found no valid reason to set aside its initial disqualification decision and declined to reinstate Sommers as McCants' defense counsel.   The Wisconsin Court of Appeals agreed with the circuit court's assessment,

finding no abuse of discretion in connection with Sommers' disqualification or the decision to deny reinstatement. In doing so, the Wisconsin Court of Appeals observed that whenever an actual or potential conflict of interest exists, a defendant's right to a fair trial outweighed the presumption in favor of his right to counsel of choice. *McCants*, 2009 WI App 110, ¶¶ 14-15.

While McCants insists that the potential conflict was so remote as to be insubstantial, he does not dispute that Collins remained a potential witness at his trial. As the circuit court noted, Collins told police that McCants admitted killing Lizette Fountain. Both the circuit court and the Wisconsin Court of Appeals recognized the potential that Collins, or possibly even Sommers, could be called to testify about what McCants had said. *McCants*, 2009 WI App 110, ¶ 18. This was sufficient to overcome the presumption that otherwise favors a defendant's counsel of choice. *See, e.g.*, *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994) ("The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial."). In that respect, the Court of Appeals' decision was consistent with *Wheat*, which recognized that the presumption in favor of a defendant's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164.

McCants points out that, even if the potential conflict was serious, he was willing to waive the conflict in the event that Collins testified at his trial. Here, however, the

Court of Appeals reasonably deferred to the circuit court's decision to reject the waiver in view of the potential for a serious conflict to arise, finding no abuse of discretion.[7]  *See McCants*, 2009 WI App 110, ¶¶ 20-22.  As the Supreme Court explained in *Wheat*, "the likelihood and dimensions of nascent conflicts are notoriously hard to predict[;]" therefore, trial courts are allowed "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 162-63.  Even if the defendant waives a conflict, the Supreme Court has held a trial court is not required to accept it due to "the prospect of being 'whip-sawed' by assertions of error no matter which way they rule."  *Wheat*, 486 U.S. at 161.

As the court of appeals appears to have recognized, a trial court that disqualifies counsel opens itself up to the argument that defendant's right to counsel of choice was violated, as made here; but in refusing to disqualify, a defendant may later claim that he was denied his Sixth Amendment right to effective assistance of counsel due to his attorney's divided loyalties.  *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *United States v. Combs*, 222 F.3d 353, 361-62 (7th Cir. 2000); *United States v. Lowry*, 971 F.2d 55, 60 (7th Cir. 1992); *see also Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1353-54 (6th Cir. 1993) (observing the tension created by a defendant's Sixth Amendment right to counsel of his choice and the likelihood that, by refusing to disqualify an attorney, a

---

[7] Notably, the circuit court questioned McCants about his waiver and found that he was unable to articulate an understanding of the conflict or the rights he would forfeit as a result.

defendant may later attempt to raise an ineffective assistance of counsel claim based on conflict of interest" (citing *Wheat*, 486 U.S. at 161-62)).  Thus, the court of appeals appropriately deferred to the circuit court's discretion in making this determination.

The Supreme Court has held that, where a conflict is alleged as the basis for counsel's disqualification, "[t]he evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164.  Since the circuit court adequately explained both its decision to disqualify Sommers and to deny reinstatement, McCants fails to show that the Wisconsin Court of Appeals' subsequent application of *Wheat* was objectively unreasonable.  While one might second guess which way the trial court came down on this issue -- particularly with respect to safeguards it might have instituted to avoid an actual conflict from arising -- the Supreme Court has made abundantly clear in *Wheat* and the other decisions cited above that it is not this court's role in considering a collateral attack on a state court conviction under § 2254.

### B. The Existence of a State-Manufactured Conflict

McCants' only other contention is that the circuit court failed to consider whether the potential conflict was "manufactured" by the state.  In *Wheat,* the Supreme Court recognized that the government "may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side."  486 U.S. at 163.  The Court added that "trial courts are undoubtedly aware of this possibility," and must "take it into consideration, along with all of the other factors which inform this sort of a

decision." *Id.*

The Wisconsin Court of Appeals noted that the circuit court "did not specifically address" the possibility the state was manufacturing a conflict at the initial hearing on disqualification, but was satisfied based on its own review of the record that the state "did not do so." *McCants*, 2009 WI App 110, ¶ 18.  The record supports this conclusion. Indeed, Sommers raised this very issue immediately during the initial hearing on the state's motion for his disqualification.  Construing the motion as a compliment to his record of success and his status as a formidable adversary ("I don't think I have ever been so flattered in my entire life . . ."), Sommers argued at length that the state manufactured the conflict because they had "good reason to fear [him]." Regardless of Sommers' prowess, the circuit court noted that *Sommers*, not the state created the potential for conflict by agreeing to represent Collins with full knowledge that he had already provided information to police about the Lizette Fountain homicide, which his then-existing client, McCants, was suspected of committing.

At the hearing on McCants' request to reinstate Sommers, counsel for McCants repeated his argument that the potential conflict was a sham created by the state for the purpose of removing Sommers from the defense team.  Other than proposing testimony about Sommers' formidable reputation, however, McCants presented nothing to refute the fact that Sommers had agreed to represent Collins with full knowledge that he could be called as a witness -- for or against -- McCants.  The Wisconsin Court of Appeals saw no reason to disturb the circuit court's conclusion that there was a "solid basis" for disqualification under *Wheat*, *McCants*, 2009 WI App 110, ¶ 21, nor does this court.

While McCants disagrees vehemently with the circuit court's decision, that court had "broad" discretion to weigh the risk that the conflict of interest caused by Sommers' decision to represent both Collins and McCants could seriously taint McCants' right to a fair trial on the first-degree intentional homicide charges pending against him. Ultimately, McCants has not shown that the state court's ruling on his claim was objectively unreasonable or "so lacking in justification" that federal habeas relief is required. *Richter*, — U.S. —, 131 S. Ct. at 786. Absent a showing that the state court's decision was contrary to clearly established precedent or an unreasonable application of that law, McCants is not entitled to relief under 28 U.S.C. § 2254(d). Accordingly, his petition must be denied.

## IV. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is

not a close one.  For the reasons already stated, the court concludes that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court.  Because reasonable jurists would not debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED THAT:

1.  The petition filed by Thomas L. McCants for a writ of habeas corpus pursuant to 28 U.S.C. §  2254 (dkt. #1) is DENIED and this case is DISMISSED with prejudice.  The clerk of court is directed to enter judgment for respondent and close this case.

2.  A certificate of appealability is DENIED.   If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 4th day of December, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge